IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

VICTOR M. RUBINSON,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 13-5178 (JBS)

**OPINION**

APPEARANCES:

Richard L. Frankel, Esq.
BROSS & FRANKEL, P.A.
102 Browning Lane, Building C-1
Cherry Hill, N.J. 08003
    Attorney for Plaintiff

Paul J. Fishman
UNITED STATES ATTORNEY
    By: Stephen P. Conte
        Special Assistant U.S. Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, N.Y. 10278
    Attorney for Defendant

**SIMANDLE, Chief Judge:**

# I.   INTRODUCTION

In this action, Plaintiff Victor M. Rubinson (hereinafter, "Plaintiff"), a college educated male with a significant history of employment as a self-employed manager/landlord of rental properties, seeks review pursuant to 42 U.S.C. § 405(g) of the Commissioner of the Social Security Administration's

(hereinafter, "Defendant") denial of his application for disability benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-434.

Mr. Rubinson claims he is disabled from progressive shortness of breath due to a paralyzed hemidiaphragm and/or phrenic nerve damage.[1]  On May 11, 2011, the Administrative Law Judge (hereinafter, the "ALJ") issued a eight page written decision denying Plaintiff, who suffers Social Security benefits for the period beginning June 1, 2005, the alleged onset date of disability, to May 11, 2011. (See R. at 16-23.)  Plaintiff owns and manages multiple rental properties in the Camden County area.  The ALJ found, under the "three prong test" that governs whether a self-employed individual's activities constitute substantial gainful activity (hereinafter, "SGA"), that Plaintiff provided "'significant services'" to the management and supervision of his real estate properties and in return received "'substantial income.'"  (R. at 20-22.)  The ALJ, accordingly, concluded at step one of the five-step sequential

---

[1] As noted by counsel for Plaintiff during the first hearing before the ALJ on December 9, 2008, Plaintiff's condition has been described as "diaphragm paralysis" and "phrenic nerve injury."  (R. at 37.)  In addition, Plaintiff's examining physician, Dennis M. Scardigli, M.D., suggested that Plaintiff's condition may be "idiopathic in nature," or, in other words, a medical condition of unknown cause.  (R. at 781.)  Plaintiff's precise diagnosis, however, does not impact the issues presented in this action.

analysis that Plaintiff engaged in SGA and, as a result, denied Plaintiff's request for disability benefits.  (R. at 22-23.)

In the pending appeal, Plaintiff argues that the ALJ's decision must be reversed and remanded on two related grounds. (See generally Pl.'s Br. at 8-19.)  First, Plaintiff argues that the ALJ committed reversible error at step one, by finding Plaintiff actively engaged in the management of his rental properties, rather than acting as merely a supervisor without substantial involvement in the operation's affairs.  (See id. at 8-10; see also Pl.'s Reply at 2-4.)  In particular, Plaintiff insists that, in finding Plaintiff provided significant services to his real estate ventures, the ALJ ignored and/or mischaracterized the relevant record evidence, namely, Plaintiff's 2007 federal tax return, a written lay statement by William McEwens, in addition to Plaintiff's statements at the hearings and to various medical examiners.  (See Pl.'s Br. at 10-15.)  Second, Plaintiff argues that the ALJ erred in his determination of "countable income" under 20 C.F.R. § 404.1575(c) and Social Security Ruling (hereinafter, "SSR") 83-34, by failing to account for certain deductions, by improperly including Plaintiff's "rental income," and by otherwise failing to perform the required regulatory review of Plaintiff's income. (See id. at 15-19; see also Pl.'s Reply at 6-9.)

The principal issue before the Court is whether substantial evidence supports the ALJ's conclusion at step one that Plaintiff provided significant services and in return received substantial income in connection with his work as a self-employed real estate manager/landlord.

For the reasons explained below, the Court finds that substantial evidence supports the ALJ's determinations, and will affirm the ALJ's decision.

## II.  BACKGROUND

### A. Factual and Procedural History

Because the pending appeal presents discrete questions concerning the ALJ's step one analysis, the Court need not retrace every facet of the voluminous administrative record developed in this action (see generally R. at 1-792), nor set forth Plaintiff's lengthy history of medical treatment.[2] (See, e.g., R. at 518-715.)  Rather, for purposes of the pending appeal, the Court notes that Plaintiff filed an application for

---

[2] Though the record in this action contains medical history relevant to Plaintiff's condition (see, e.g., R. at 632-92 (providing the office treating records of Plaintiff's primary care physician, Katharine Garnier, M.D.)), the severity and/or extent of Plaintiff's condition does not impact the pending action.  Indeed, neither party set forth any recitation of Plaintiff's medical history, nor any legal discussion of the various medical findings.  (See, e.g., Pl.'s Brief; Def.'s Opp'n; Pl.'s Reply.)  Therefore, the Court will discuss the factual predicate and procedural circumstances of this litigation in unison.

disability insurance benefits on January 12, 2006. (See R. at 138-39.)

In connection with the Social Security Administration's (hereinafter, the "SSA") review of Plaintiff's initial application, the New Jersey Division of Disability Services conducted a face-to-face interview of Plaintiff on February 2, 2006. (See R. at 427-38.) During the interview, Plaintiff claimed that an injury sustained when diving into shallow water in June 2005 rendered him "unable to lie on [his] back, bend over, lift any weight or perform any sort of physical exertion." (R. at 431-33.)  Plaintiff, in particular, professed an inability to "walk[] up a flight of steps" without shortness of breath, and stated that his "lungs simply cannot pump enough oxygen under duress."  (Id.)  Plaintiff further explained that his limitations prevented him from completing his "previous job responsibilities" running "the day to day operations" of his rental properties, and required him "to hire sub-contractors in order to keep [his] business afloat."  (Id.)

Following the interview, the claims adjudicator requested that Plaintiff complete a functional audit, describing, in greater detail, the manner in which Plaintiff's breathing condition limited his daily activities.  In connection with this functional audit, Plaintiff, in essence, reiterated the limitations expressed during his initial interview.  (See

5

generally R. at 439-47.)  Plaintiff specifically reiterated that
his physical condition precluded him from participating in any
sports or physical activities or the exertional tasks required
in maintaining his rental properties, including "painting,
lifting, building," and "general maintenance repairs."  (R. at
439-47.)  Indeed, Plaintiff stated that any sustained activity,
whether walking, bending, climbing, or even talking, caused
shortness of breath.  (R. at 447.)  Plaintiff further indicated
that, as a result of his slow movements and shortness of breath,
any activities took "twice as long" to complete.  (R. at 441.)
Nevertheless, Plaintiff professed an ability to perform light
cleaning and laundry, to regularly engage in normal social
activities, to go to the office to "do about 2-3 hours of work
daily," and to travel to the various rental properties for
"about 2 hours daily."  (R. at 441, 443, 447.)

Thereafter, at the direction of the New Jersey Division of
Disability Services, Ken Klausman, M.D., conducted a medical
evaluation of Plaintiff on June 15, 2006.  (R. at 710-13.)  At
that time, Plaintiff identified past relevant work in the
maintenance, property management, and construction fields.  (R.
at 711.)  Plaintiff indicated, however, that his injury, and
related shortness of breath, limited him to work on a part time
basis.  (Id.)  In addition, Plaintiff expressed significant
injury-induced limitations on his ability to travel, to

6

participate in recreational activities, in addition to an inability to sit, stand, walk, climb stairs, bend, squat, and/or sleep for prolonged periods, without experiencing shortness of breath. (R. at. 711.) Nevertheless, Dr. Klausman's examination generally depicted Plaintiff as a healthy, able-bodied individual, albeit with a history "of paralysis of the diaphragm secondary to phrenic nerve injury." (R. at 712-713.) In particular, Dr. Klausman reported that Plaintiff exhibited a normal gait, range of motion, fine motor skills, and neurological functioning. (R. at 712-13.) Dr. Klausman, however, noted slightly "decreased breath sounds" on Plaintiff's right side, as well as Plaintiff's inability "to lie down on his back for more than few seconds without" shortness of breath. (Id.)

        In light of Dr. Klausman's findings, among other medical documentation supplied by Plaintiff, the SSA found Plaintiff capable of returning to "usual work," despite his "nerve injury involving the diaphragm," particularly given his age, education, training, and work experience. (R. at 153-54.) Consequently, because Plaintiff's condition did not preclude him from working, the SSA found Plaintiff "not disabled," and denied his application for Social Security benefits on July 12, 2006. (Id.)

        Plaintiff requested reconsideration of the SSA's initial determination on September 22, 2006, on the grounds that the SSA

"failed to adequately consider the severity and effect" of Plaintiff's impairments. (R. at 77.)  In so requesting, however, Plaintiff did not report any change in his physical condition, nor provide any additional record evidence. (R. at 159-61, 725.) Rather, Plaintiff merely relied upon the same information submitted in connection with his initial application.  (R. at 159-61.)  Given the absence of any new allegations, the SSA denied Plaintiff's request for reconsideration on May 1, 2007. (Id. (finding the original determining denying Plaintiff's claim for disability benefits "proper under the law").)  On June 27, 2007, Plaintiff requested a de novo hearing before an ALJ (see R. at 162), and the SSA scheduled the hearing for December 9, 2008. (See R. at 168-80.)

In advance of the hearing, Plaintiff submitted an array of additional lay and expert documentation concerning the work-related limitations imposed by his condition.

In particular, Plaintiff participated in a follow-up medical examination by Dr. Klausman on October 30, 2008.  (R. at 735-37.)  In connection with this evaluation, Dr. Klausman largely reiterated his prior observations concerning Plaintiff's physical conditions, intellectual abilities, and mental clarity. (Id.)  Dr. Klausman noted, however, Plaintiff's continued complaints concerning his shortness of breath and persistent cough, and again stated his impression that Plaintiff suffered

8

from a "hemidiaphragm paralysis." (R. at 735, 737.) Nevertheless, Dr. Klausman opined that Plaintiff's condition had no impact on his ability to continuously lift or carry materials of less than 50 pounds, to sit or stand, to use his hands or feet, and/or to stoop, kneel, crouch or crawl. (See R. at 728-34.) Rather, Dr. Klausman only indicated that Plaintiff's condition limited his ability to frequently and/or continuously carry materials in excess of 51 pounds, to walk for prolonged periods of time (more than 3-4 hours), and to climb stairs, ramps, ladders, or scaffolds. (Id.) Aside from these limitations, however, Dr. Klausman expressed no additional limitations on Plaintiff's work-related activities. (Id.) To the contrary, Dr. Klausman suggested that Plaintiff possessed the ability to engage in a wide-array of personal, social, and/or professional activities, subject only to the identified restrictions. (Id.)

In addition, Plaintiff's primary care physician, Katharine Garnier, M.D., submitted an opinion concerning Plaintiff's physical capacity for work. (See R. at 774-76.) Dr. Garnier similarly indicated that Plaintiff's permanent "phrenic nerve injury" resulted in "ongoing difficulties consisting of pain, breathlessness," and difficulty sitting or standing "due to pain and fatigue for even reasonably brief periods of time." (R. at 776.) Contrary to Dr. Klausman, however, Dr. Garnier rated

9

Plaintiff "as capable of less than sedentary work," due to his "inability to occasionally exert up to 10 pounds of force or to frequently lift, carry, push or pull objects." (Id.)  Moreover, despite being "capable at times of walking/standing or driving," Dr. Garnier specifically indicated that Plaintiff "must be able to rest" when necessary, and indicated that there should be no expectation that he "consistently" perform even those limited activities.  (Id.)

Finally, Karen Rubinson, Plaintiff's wife, submitted a statement describing Plaintiff's various physical symptoms, including "difficulty breathing, trouble clearing his throat and lungs," and "continuous sneezing and coughing."  (R. at 491.) In addition, Mrs. Rubinson indicated that Plaintiff's injury rendered him incapable of completing most tasks without assistance, and that he required breaks while participating in any even "minimal activity," including "walking greater than two blocks."  (Id.)

Armed with this additional evidence, Plaintiff proceeded to an administrative hearing before an ALJ on December 9, 2008, at which time he appeared, with counsel, and testified before an ALJ.  (See R. at 28-102.)  At the conclusion of the hearing, the ALJ advised that the record would remain open for an additional 33 days, in order for Plaintiff to submit any additional

documentation relevant to the ALJ's determination of Plaintiff's entitlement to disability benefits. (See R. at 99-102.)

Plaintiff, in turn, submitted various personal statements. In one such statement, William McEwan, an employee of Plaintiff since November 2004, indicated that, prior to Plaintiff's injury, he performed a "large share" of the physical labor, "be it painting, sheetrock installation, or other varied jobs," and "labored along side" Mr. McEwan "as a working supervisor." (R. at 503.) Following the injury, however, Mr. McEwan noted Plaintiff's "immediately and permanently noticeable" breathing difficulty. (Id.) Mr. McEwan stated that, as a result of such difficulty, Plaintiff "had to rely upon other workers" for the manual labor and limited his involvement on the job sites "to occasional supervision." (Id.) In another statement, Mrs. Rubinson, Plaintiff's wife, stated that, since Plaintiff's injury, she had "assisted in almost all aspects of his office work, including, checking messages, filing, [and] composing correspondence" for "anywhere from 5-10 hours a week." (R. at 504.)

In addition, Plaintiff produced a report of Dennis M. Scardigli, M.D., who evaluated Plaintiff for chief complaints of "fatigue, extremity numbness, difficulty walking, muscle weakness, muscle spasm, shortness of breath, difficulty concentrating and maintaining attention as well as memory loss."

11

(R. at 777.)  In his report, Dr. Scardigli noted Plaintiff's
"long and protracted course in coming to [a] diagnosis," and
discussed Plaintiff's lengthy history of treatment from "a
chiropractor, his primary care physician, pulmonary specialists,
cardiology specialists, physical therapist," and a neurologist.
(Id.)  Moreover, though he questioned the cause of Plaintiff's
injury, Dr. Scardigli credited the various consistent medical
opinions concerning Plaintiff's diaphragmatic paralysis, as well
as the consistency between Plaintiff's "credible" subjective
complaints and his own clinical and objective findings.  (R. at
781.)  Consequently, based upon "the history provided, the
medical records reviewed, [the] physical examination and
literature search," Dr. Scardigli deemed Plaintiff "unable to
function on a regular and continuing basis at even a sedentary
occupation since June 2005."  (Id.)

        Following Plaintiff's additional submissions, the ALJ
issued a written decision on September 23, 2009, finding
Plaintiff "not under a 'disability,' as defined in the Social
Security Act," and therefore ineligible for Social Security
benefits. (See R. at 143-46.) Plaintiff filed a formal request
for review of the ALJ's decision on November 13, 2009 (see R. at
184), and submitted additional legal argument concerning
Plaintiff's alleged entitlement to Social Security benefits.
(See R. at 185, 505-11.)  On April 2, 2010, the Appeals Council

vacated the ALJ's September 23, 2009 decision, and remanded the matter to the ALJ for an additional hearing and further evidentiary development with regard to whether Plaintiff "engaged in substantial gainful activity after his alleged onset date" in accordance with 20 C.F.R. § 404.1575(a)(2) and SSR 83-34. (R. at 148-49.)

The ALJ, in turn, scheduled a hearing for October 26, 2010 (see R. at 203), and requested additional evidence concerning Plaintiff's work abilities, including his federal tax returns for 2008 and 2009. (See R. at 512.) At the hearing on remand, Plaintiff appeared, with counsel, and provided additional testimony concerning his physical abilities, limitations, and earnings. (See R. at 103-37.) On May 11, 2011, however, the ALJ again found Plaintiff "not under a 'disability,' as defined in the Social Security Act," and therefore ineligible for disability benefits. (R. at 13-23.) Plaintiff filed another request for review of the ALJ's decision on July 5, 2011 (see R. at 11), and again submitted additional legal argument concerning Plaintiff's entitlement to benefits. (See R. at 513-17.) The Appeals Council, however, found "no reason" to review the ALJ's decision on remand and denied Plaintiff's request for review on June 26, 2013, thereby rendering the ALJ's decision the final administration decision in this action. (R. at 1-4.) Plaintiff timely filed this action, which Defendant opposes. The Court

has jurisdiction to review Defendant's final decision pursuant
to 42 U.S.C. § 405(g).

**B. ALJ's Decision**

In a written opinion dated May 11, 2011, the ALJ discussed,
at length, the tests governing the inquiry of whether the
activities involved in, and the income derived from, Plaintiff's
self-employment satisfied the requirements of SGA, and
ultimately concluded that, under either of two tests,
Plaintiff's work activities met the requirements of SGA.  (See
R. at 18-21.)

With regard to the first test, i.e., whether Plaintiff
rendered significant services and received a substantial income
from his business, the ALJ relied upon Plaintiff's own
statements concerning the time required for his management
activites, in addition to the various descriptions of Plaintiff
as a "'heavily'" involved "'contractor'" or "'property
manager,'" in finding that the record "abundantly" supported the
conclusion that Plaintiff rendered significant services to his
real estate ventures.  (R. at 20-21.)  The ALJ similarly
concluded that, although Plaintiff earned "less than SGA" for
most years, his 2009 post-injury income exceeded his 2004 pre-
injury income, and remained otherwise "comparable to the
'unimpaired' in the same or similar business."  (Id.)  In so
finding, the ALJ rejected Plaintiff's position that Plaintiff's

14

work activities principally involved ministerial landlord duties, thereby rendering any rental income received excludable from the SGA calculation under 20 C.F.R. § 404.1082(d) and SSR 85-18. (See R. at 21-22.)  Rather, because the record evidence demonstrated that Plaintiff's duties far exceeded the ""minimal services normally provided to apartment renters,'" the ALJ found Plaintiff's involvement more akin to a "'real estate dealer'" than a passive landlord and, accordingly, deemed the income derived from the real estate properties includable in the SGA analysis.  (Id.)  For all of these reasons, the ALJ determined that the record evidence established that Plaintiff provided "'significant services' and in return received 'substantial income,'" as required under the first test.  (R. at 21.)

With respect to the second test, whether Plaintiff engaged in work activity comparable to that of unimpaired individuals in the same or similar business, the ALJ found Plaintiff's "active" management and oversight of his properties comparable to that of unimpaired individuals, particularly given Plaintiff's admission that he continued "to make suggestions to outside contractors" and remained "present at the job sites to 'observe' the work being completed." (Id.)  In that regard, the ALJ rejected Plaintiff's position that his inability to participate in the physical tasks associated with property management rendered his

15

contributions incompatible to that of a similar individual engaged in the same or similar business. (Id.)

For all of these reasons, the ALJ concluded that Plaintiff's self-employment and entrepreneurial activities had been more than just "'passive'" "'or minimal,'" and instead constituted SGA under two of the tests set forth in 20 C.F.R. § 404.1575(a)(2) and SSR 83-34. (R. at 17, 22.) As a result, the ALJ found Plaintiff not disabled under the Social Security Act, and therefore not entitled to disability benefits. (R. at 22.)

**III. STANDARD OF REVIEW**

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008). The requirement of substantial evidence, however, constitutes a deferential standard of review, see Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004), and does not require "a large or [even] considerable amount of evidence." Pierce v. Underwood, 487 U.S. 552, 564 (1988). Rather, substantial evidence requires "more than a mere scintilla[,]" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999), but generally less than a preponderance. See Jones, 364 F.3d at 503. Consequently, substantial evidence supports the Commissioner's determination where a "reasonable mind might accept the relevant evidence as adequate" to support

the conclusion reached by the Commissioner. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In order to facilitate the Court's review, the ALJ must set out a specific factual basis for each finding. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975). Additionally, the ALJ "must adequately explain in the record [the] reasons for rejecting or discrediting competent evidence," Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)), and must review all pertinent medical and nonmedical evidence "and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). However, the ALJ need not discuss "every tidbit of evidence included in the record." Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). Rather, the ALJ must set forth sufficient findings to satisfy the reviewing court that the ALJ arrived at a decision through application of the proper legal standards, and upon a complete review of the relevant factual record. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983).

## IV. DISCUSSION

Ordinarily, the SSA reviews claims of disability in accordance with the sequential five-step process set forth in 20 C.F.R. § 404.1520. See also Williams v. Sullivan, 970 F.2d

17

1178, 1180 (3d Cir. 1992).  However, the first two steps involve "threshold determinations" for evaluating whether an individual possesses a qualifying disability.  Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 545 (3d Cir. 2003).  In step one, the SSA determines whether the claimant engages in "substantial gainful activity."  20 C.F.R. § 404.1520(b); Burnett v. Comm'r Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000).  However, the claimant bears the burden of demonstrating the absence of any SGA.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987) (delineating the burdens of proof at each step of the disability determination); Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) (same).  Consequently, a failure to meet this burden, automatically results in the denial of benefits.  Newell, 347 F.3d at 545 (citation omitted).

Here, the ALJ found, at step one, that Plaintiff's self-employment and entrepreneurial activities constituted substantial gainful activity under 20 C.F.R. § 404.1520(b), therefore obviating the need to continue the sequential analysis.  (See R. at 17, 22.)  Plaintiff, however, generally argues that the ALJ erred in his step one analysis, by failing to credit and/or accurately characterize certain record evidence.  (See generally Pl.'s Br. at 8-18.)  Consequently, because the issues presented in the pending action turn upon the scope of the ALJ's step one determinations as applied to a self-

18

employed claimant, the Court will briefly introduce the relevant regulatory framework.

## A. Legal Standard for Determining Whether a Self-Employed Individual Engages in Substantial Gainful Activity

As stated above, at step one, the ALJ considers whether the claimant engages in substantial gainful activity, i.e., work activity both "substantial and gainful" in scope. 20 C.F.R. §§ 404.1520(a), 404.1510, 404.1572.  Substantial work activity, in turn, "involves doing significant and productive physical or mental duties," even if on a part-time basis.  20 C.F.R. § 404.1572(a).  Gainful work activity similarly includes "the kind of work usually done for pay or profit," regardless of whether any profit materializes.  20 C.F.R. § 404.1572(b).  Personal care activities such as "household tasks, hobbies, therapy, school attendance, club activities, or social programs," by contrast, generally fail to constitute substantial gainful activity.  20 C.F.R. § 404.1572(c).

Under the Social Security Act and its implementing regulations, the SSA evaluates a self-employed individual's activities in connection with an SGA analysis under three tests. See 20 C.F.R. § 404.1575(a)(2)(i)-(iii).  Under the first test, a self-employed individual engages in substantial gainful activity if he (1) renders services significant to the operation of the business and (2) receives a substantial income from such

business.  See 20 C.F.R. § 404.1575(a)(2)(i).  Thereafter, the
ALJ only turns to the second and/or third tests, in the event
the ALJ determines that the claimant does not meet the SGA
requirements of the first test.  See 20 C.F.R. § 404.1575(a)(2).
Here, despite the ALJ's determination that Plaintiff engaged in
SGA under the first test, the ALJ still evaluated the second
test, in light of certain arguments raised by counsel for
Plaintiff.  (See R. at 21.)  Therefore, the Court notes that,
under the second test, an individual's activities qualify as SGA
if the activity is comparable to that performed by unimpaired
people in the same or similar line of work, in terms of factors
such as hours, skills, energy output, efficiency, duties, and
responsibilities.  See 20 C.F.R. § 404.1575(a)(2)(ii).

Plaintiff argues that the ALJ committed multiple, but
substantially related, errors in his evaluation of whether
Plaintiff's work activities qualified as SGA, and the Court will
address each in turn.  (See Pl.'s Br. at 8-18.)

### 1. The ALJ Did Not Err in Finding, under the First Test, that Plaintiff Contributed Significant Services

With respect to the first test, the ALJ concluded that the
record evidence amply demonstrated that Plaintiff rendered
significant services as the "property manager," "supervisor,"
and "contractor" of his rental properties.  (R. at 20-21.)  In
so finding, the ALJ relied, almost entirely, upon Plaintiff's

own testimony concerning the fact that he commits "at least twenty hours per week" in maintaining his properties, in addition to spending "more than forty five hours per month in management activities." (R. at 21.)  Moreover, the ALJ credited the manner in which Plaintiff identified his occupation in connection with his 2007 federal income tax return, his statements to Dr. Klausman and Dr. Scardigli, and the statement submitted by Plaintiff's employee, William McEwan.  (R. at 20-21.)

Plaintiff, however, insists that the ALJ's finding at this stage requires remand, because the ALJ ignored and/or mischaracterized purportedly "critical aspects" of such evidence.  (Pl.'s Br. at 10.)  In particular, Plaintiff claims that the ALJ's reliance upon "a field on a tax return" and the various descriptions of Plaintiff as a "contractor" or "landlord" by Mr. McEwan and in connection with the medical examiners' reports, all provide an insufficient predicate for a finding that Plaintiff performed SGA, particularly given the undisputed record evidence demonstrating Plaintiff's inability, post-injury, to perform any of the "physical" tasks associated with his real estate properties.  (Id. at 10-15.)

The Court, however, need not belabor Plaintiff's assertions concerning the ALJ's evaluation of the initial prong of the first test, because Plaintiff's own statements provide ample

21

support for the ALJ's determination that Plaintiff's managerial
work activities in connection with his rental properties
possessed the requisite significance, despite the fact that his
functioning as a physical laborer post-injury clearly
diminished.

Critically, in evaluating the significance of the
individual's services, an individual's contributions to a sole
proprietorship necessarily qualify as services significant to
the business.  See 20 C.F.R. 404.1575(b)(1) (setting forth the
regulatory definitions of "significant services"); see also SSR
83-34, 1983 WL 31256, at *2 (Jan. 1, 1983) (setting forth the
policy regarding whether work performed by self-employed persons
qualifies as substantial gainful activity).  If, however, the
business involves the services of more than one person, an
individual provides significant services if the person
contributes "more than half the total time required for the
management of the business," or renders "management services for
more than 45 hours a month regardless of the total management
time required by the business."  SSR 83-34, 1983 WL 31256, at *3
(emphases added).

Here, despite testifying that his businesses constitute "a
hodgepodge of different business entities," Plaintiff gives
short shrift to the nature and organizational structure of
Plaintiff's real estate ventures.  (R. at 93.)  Indeed,

22

Plaintiff's hearing testimony, both in connection with the ALJ's initial determination and upon remand, contains numerous references to the fact that Plaintiff owns at least some of his rental properties as sole proprietorships which he manages. (See, e.g., R. at 93-94.)  Plaintiff testified that he owns and manages approximately 30 residential units in at least four municipalities (R. at 117-118, 126), and that the quantity of his properties has not changed "in years." (R. at 127.)  He is not just an investor in rental properties, but also is the manager or supervisor for each property.  According to the record, both before and after the onset of his alleged disability, he shows properties to prospective tenants, selects them, deals with the leases and rental payments, and decides what repairs and improvements are needed.  In recent years, he hires contractors to perform actual repairs that he used to be able to perform himself and he supervises or inspects them on-site.  All of these managerial activities require his skill and daily attention and are services that he would have to hire someone to perform if he did not perform this work.  In that regard, even if Plaintiff accepted the occasional unpaid assistance of his wife and/or nephew (see, e.g., R. at 53, 114, and 120), Plaintiff's services would, in accordance with the SSA's regulation, appear "necessarily 'significant'" under the initial prong of the first test.  See SSR 83-34, 1983 WL 31256,

23

at *2 ("The services of an individual in a one-person business are necessarily 'significant.'").

However, even assuming that Plaintiff's businesses involved the services of more than one individual, Plaintiff's own testimony readily reflects that he personally committed more than 45 hours per month to the management of his real estate ventures.  Indeed, in the initial hearing before the ALJ on December 9, 2008, Plaintiff testified that, post-injury, he spent approximately 10 hours per work performing "true office work," in addition to spending several hours per week "meeting with contractors."[3]  (R. at 49, 55.)  To that end, Plaintiff estimated that he spent 15 hours per work managing his various real estate properties.[4]  (See R. at 56.)  During the hearing

---

[3] For that reason, the Court rejects counsel for Plaintiff's assertion that Plaintiff testified to spending no more than 10 total hours per work managing his real estate ventures.  (See Pl.'s Reply at 5-6.)  Moreover, even if one narrow portion of Plaintiff's testimony could fairly be construed to reflect that he committed only new hours of work per week (see R. at 115), the weight of record evidence sufficiently supports the ALJ's determination that Plaintiff's engagement in office and supervisory tasks collectively subsumed, at a minimum, 3 hours of each day.

[4] In addition, Plaintiff specifically discounted his estimates to account for the additional time required by his condition to perform various managerial tasks.  (See, e.g., R. at 55 (setting forth Plaintiff's statements that all tasks take him "twice as long because it's a lot of start and stop").)  Moreover, though Plaintiff challenges the ALJ's calculation, Plaintiff does not, and could not, dispute that the management of real estate properties logically requires both office work and the oversight/supervision of construction projects.  See 20 C.F.R. § 404.1573(d) (noting that, "[s]upervisory, managerial, advisory

upon remand on October 26, 2010, Plaintiff reiterated that the "overall time involved" in his management of his real estate properties remained unchanged.  (R. at 124.)  Indeed, Plaintiff specifically stated that office work related to his properties continued to "mechanically" require 10 hours of work (R. at 116-17, 124), augmented by the numerous additional hours spent advising the various contractors of "what to do" and ensuring the completion of various construction projects.  (R. at 125.) Plaintiff, accordingly, asserted that, post-injury, he kept himself "involved heavily."  (R. at 124.)

Prior to the hearings, Plaintiff similarly stated that his post-injury work activities including going to the office "do[ing] about 2-3 hours of work daily," and traveling to the various real estate properties for "about 2 [additional] hours daily."[5]  (R. at 441, 443, 447.) Consequently, even if the Court assumed that Plaintiff only performed the minimum number of his estimated hours, e.g., 4-5 hours per day, such hours plainly equate, over the course of a month (counting <u>only</u> business days), to more than 60 hours, a period far in excess of that

---

or other significant personal services" may indicate "substantial gainful activity").  Indeed, both activities would seem vital to the success and occupancy of Plaintiff's real estate properties.
[5] Plaintiff's tax returns further confirm the significance of this travel, post-injury.  Indeed, Plaintiff reported driving 19,889 miles for business purposes in 2007 (<u>see</u> R. at 318), 3,455 miles in 2008 (<u>see</u> R. at 362), and 14,144 miles in 2009. (<u>See</u> R. at 396.)

required under 20 C.F.R. 404.1575(b)(1) and SSR 83-34.
Therefore, the Court finds that substantial evidence supports
the ALJ's determination that Plaintiff engages in SGA, because
he "spends more than forty five hours per month in management
activities." (R. at 21.)

Nor does the undisputed record evidence concerning the
limitations on Plaintiff's ability to perform manual labor
compel any contrary result. Manual labor tasks (including
Plaintiff's prior performance of any necessary repairs and/or
construction) comprised, as set forth in Plaintiff's own
testimony and statements, contributions distinct from his
managerial activities. (See, e.g., R. at 48 (setting forth
Plaintiff's statements that, prior to his injury, he "did about
85 to 95 percent of all maintenance repairs," in addition to
"the collections and the management and the ... meeting with the
tenants"), 116 (noting the distinct nature of Plaintiff's
"physical labor" and "office work").) Therefore, his current
inability to physically contribute to the same extent as before
his injury does not alter the conclusion that Plaintiff
contributes significant managerial services to his rental
properties, even if he no longer performed any necessary
repairs. Rather, as stated above, the record evidence—
particularly Plaintiff's own statements (see, e.g., R. at 116-
17, 124-25)—supports the ALJ's conclusion that Plaintiff

26

contributed hours to the management of his real estate properties in excess of that required under 20 C.F.R. 404.1575(b)(1) and SSR 83-34, and despite any occasional assistance received from third parties.

For all of these reasons, the Court finds that substantial evidence supports the ALJ's determination at the initial prong of the first test that Plaintiff provided significant services to his businesses.  (See R. at 21.)  Therefore, the Court turns to the ALJ's determination at the second prong of the first test.

### 2. The ALJ Did Not Err in Finding, under the First Test, that Plaintiff Received Substantial Income from his Real Estate Business

With respect to the second prong of the first test, the ALJ concluded that Plaintiff derived "'substantial income'" from his real estate ventures, because his post-injury "'countable income'" remained comparable to, or more than, his pre-injury earnings.  (R. at 21.)  In that regard, although the ALJ noted that Plaintiff earned "less than SGA" for "most years in question," the ALJ found his earnings "still comparable to the 'unimpaired' in the same or similar business."  (Id. (citing 20 C.F.R. § 404.1574(c)(2)(ii)).)  Moreover, the ALJ relied upon the fact that Plaintiff's "2009 profit" exceeded that earned in 2004, prior to his injury.  (Id. (citation omitted).)

Plaintiff, however, argues that the ALJ erred in his calculation of Plaintiff's countable income on two grounds. (See generally Pl.'s Br. 15-19; Pl.'s Reply at 1-3, 6-9.) First, Plaintiff submits that the ALJ erred by not classifying Plaintiff's real estate earnings as excludable rental income pursuant to 20 C.F.R. § 404.1082(d) and SSR 85-18. (See Pl.'s Br. at 17-19; Pl.'s Reply at 1-3.) Second, Plaintiff claims that the ALJ failed to perform the "required regulatory analysis" concerning Plaintiff's income. (Pl.'s Reply at 8-9; see also Pl.'s Br. at 15-16.)

In evaluating the substantiality of self-employed individual's income, the ALJ must engage in a two-part inquiry. See SSR 83-34, 1983 WL 31256, at *4. First, the ALJ determines the individual's countable income, followed by an evaluation of whether such income rises to a sufficiently substantial level. See id. Because Plaintiff claims the ALJ erred at each step of the inquiry, the Court will address each in turn.

**a. The ALJ Did Not Err in Including the Income Received from Plaintiff's Rental Properties in his Analysis of SGA**

In calculating Plaintiff's countable income, the ALJ rejected Plaintiff's position that "his rental income should not be included in computing SGA," because Plaintiff's activities in connection with the rental properties far exceeded the "'minimal services normally provided to apartment renters.'" (R. at 22.)

28

Plaintiff disputes the ALJ's computation of Plaintiff's countable income, arguing that all of Plaintiff's earnings constitute excludable rental income pursuant to 20 C.F.R. § 404.1082(d) and SSR 85-18.[6] (See Pl.'s Br. at 17-18; Pl.'s Reply at 1-4.)

The Court, however, need not belabor Plaintiff's arguments, because 20 C.F.R. § 404.1082(d) and SSR 85-18 concern calculating covered earnings for purposes of Social Security coverage, but have no relevance in the evaluation of SGA.[7]

Part 404 of the Code of Federal Regulations contains multiple, unrelated subparts. See 20 C.F.R. §§ 404.1-404.2127 (setting forth Subparts A through V). Subpart K, for example, of which 20 C.F.R. § 404.1082 constitutes one component, concerns the determination of "covered earnings" for purposes of Social Security coverage, 20 C.F.R. § 404.1001(a)(1); while, Subpart P, under which 20 C.F.R. § 404.1575(c) falls, governs

---

[6] It is undisputed that the rent received from Plaintiff's properties constitutes Plaintiff's only source of income. (See, e.g., R. at 35.)

[7] Defendant did not raise this issue in connection with its briefing (see, e.g., Def.'s Opp'n at 7), nor does the ALJ appeared to have hinged his determination upon the distinction. (See R. at 21.) Nevertheless, this Court may affirm the ALJ's judgment on any ground supported from the record. See Oss Nokalva, Inc. v. European Space Agency, 617 F.3d 756, 761 (3d Cir. 2010) ("It is an accepted tenet of appellate jurisdiction that we may affirm a judgment on any ground apparent from the record, even if the district court did not reach it.") (internal citation and quotation omitted); Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999) (same).

the determination of whether an individual possesses a qualifying "disability" for purposes of disability benefits.  20 C.F.R. § 404.1501.  The Subparts, however, have no relevant cross-relation in their requirements, nor the independent analyses that govern their respective determinations.

Indeed, the introduction to Subpart K states, in relevant part, that:

> (4) If you work for yourself, you are self-employed. The subpart explains our rules on the kinds of self-employment that are covered and the kinds that are not.
>
> (5) If you are self-employed, your covered earnings are called self-employment income which is based on your net earnings from self-employment during a taxable year. This subpart explains our rules on the kinds of earnings that are covered as net earnings from self-employment and the kinds that are not. We also explain how to figure your net earnings from self-employment and determine your self-employment income which is the amount that goes on our records.

20 C.F.R. §§ 404.1001(a)(4), (5) (emphases added).  Section 404.1080, in turn, provides that, "[i]f you are self-employed, you must first determine the amount of your net earnings from self-employment before figuring the amount of your earnings that count for social security purposes ... [s]ubject to the special rules in §§ 404.1081 through 404.1095."  20 C.F.R. § 404.1080(a) (emphases added).  These provisions therefore indicate that 20 C.F.R. § 404.1082 constitutes one of the "special rules" for calculating covered earnings under Subpart K, rather than a rule

30

of general applicability to all coverage and/or entitlement determinations under the SSA.[8] Id.

The introductory provisions of Subpart P make clear that the provisions of Subpart P provide the relevant regulations applicable to the SGA analysis, including the determination of countable income.  See 20 C.F.R. § 404.1501.  Critically, however, these provisions contain no relevant cross-reference to 20 C.F.R. § 404.1082, nor the "net earnings from self-employment" used in determining an individual's Social Security coverage.[9]  Rather, Subpart P simply provides that the determination of countable income be made by deducting normal business expenses, among other deductions, from gross income in order to determine net income.  See 20 C.F.R. § 404.1575(c)(1).

As a result, the Court finds no support for Plaintiff's position that 20 C.F.R. § 404.1082 governed the ALJ's determination of countable income for purposes of 20 C.F.R. § 404.1575.  (See, e.g., Pl.'s Br. at 17-18; Pl.'s Reply at 1-4.)

---

[8] The Social Security Ruling relied upon by Plaintiff, SSR 85-18, in turn, further illustrates the relevant inquiry under 20 C.F.R. 404.1082(d), and discusses relevant case law concerning coverage as an "employed person[]" under the SSA.  SSR 85-18, 1985 WL 56850 (1985).
[9] Subpart P appears to only reference Subpart K "for an explanation of material participation" in the production or the management "of the production of the things raised on a rented farm."  20 C.F.R. § 404.1075(b)(2) (discussing the meaning of "significant services" for a "farm landlord").

To the contrary, at least one district court explicitly addressed, and rejected, an identical argument. See in Ciuffi v. Astrue, No. 09-3042, 2009 WL 4403939, (E.D. La. Nov. 25, 2009). Indeed, for principally the same reasons stated above, the Ciuffi court found "no merit" to the plaintiff's argument "that the SGA issue should have been resolved under Section 404.1082." Id. at *5 (finding that 20 C.F.R. § 404.1082 does not apply to the countable income analysis under 20 C.F.R. § 404.1575). Rather, the Ciuffi court concluded that 20 C.F.R. § 404.1575 alone sets forth the "proper standard." Id. This Court agrees. See Maloney v. Celebrezze, 337 F.2d 231, 233 (3d Cir. 1964) (only considering whether the appellant's income constituted excludable "rentals from real estate" in the "computation of net earnings from self-employment" under 42 U.S.C. § 411(a)(1), the section of the SSA governing the determination of a self-employed person's coverage for Social Security benefits). Therefore, the Court rejects Plaintiff's position that the ALJ's evaluation of countable income for SGA purposes required an evaluation of 20 C.F.R. § 404.1082 and SSR 85-18. (See Pl.'s Br. at 17-18; Pl.'s Reply at 1-4.) Rather, the Court finds that the ALJ appropriately considered the relevant requirements of 20 C.F.R. § 404.1575(c) by specifically evaluating the only earnings documentation submitted by Plaintiff, namely, his tax returns for the years 2004, 2005,

2006, 2007, 2008, and 2009.  Therefore, the Court turns to the
ALJ's consideration of the substantiality of Plaintiff's income.

### b. The ALJ Did Not Err in Evaluating the Substantiality of Plaintiff's Income

The only year of self-employment for which Plaintiff
provided financial information before his injury was 2004.  In
finding that Plaintiff met the criteria for substantial income,
the ALJ made two specific findings.  (See R. at 21.)  First, the
ALJ observed that Plaintiff's tax returns reported "greater"
earnings in 2009 "than in 2004, i.e., prior to his injury."
(Id. (citation omitted))  Second, the ALJ concluded that
Plaintiff's earnings remained "comparable to the 'unimpaired' in
the same or similar business," despite the fact that Plaintiff
earned less than the SGA guideline requirements for "most years
in question." (Id. (citing 20 C.F.R. § 404.1575(c)(2)(ii)).

Plaintiff challenges the ALJ's findings to the extent the
ALJ failed to discuss the basis for his determination of
Plaintiff's countable income, failed to state the standard used
in determining that Plaintiff earned an income comparable to
that of similarly situated unimpaired individuals, and failed to
develop any information regarding Plaintiff's earnings in 2010
and/or 2011.  (Pl.'s Reply at 8-9; see also Pl.'s Br. at 15-16.)
Defendant, however, argues that the ALJ correctly evaluated
Plaintiff's income because Plaintiff's "profits improved post-

injury" and otherwise remained "comparable" to his pre-injury earnings.  (Def.'s Opp'n at 6.)  For the reasons that follow, the Court concludes that substantial record evidence supports the ALJ's assessment of Plaintiff's income.

In evaluating the substantiality of income, the ALJ first deducts "normal business expenses" and other allowable deductions from gross income, in order to determine countable income. 20 C.F.R. § 404.1575(c).  The individual's countable income may then be considered "substantial" if it meets the guideline requirements of "countable income" in 20 C.F.R. § 404.1574(b)(2),[10] namely, whether it reasonably compares to what the individual earned before becoming "seriously impaired," <u>or</u> whether it reasonably compares "to that of unimpaired self-employed persons" in "the same or a similar business."[11]  20 C.F.R. § 404.1575(c)(2)(i)-(ii).

---

[10] As depicted below, the guideline requirements provide that countable income is "substantial" if it averages more per month than $810 for the year 2004, $830 for the year 2005, $860 for the year 2006, $900 for the year 2007, $980 for the year 2009, and $1000 for the years 2010 and 2011. <u>See</u> Program Operations Manual System DI 10501.015 (effective Oct. 19, 2010).
[11] In concluding that Plaintiff's post-injury earnings remained "comparable to the 'unimpaired' in the same or similar business" (<u>id.</u> (citing 20 C.F.R. § 404.1575(c)(2)(ii))), Plaintiff correctly notes that the ALJ failed to state the standard utilized for such comparison, nor provided any explanation concerning why such determination required no independent evidence.  <u>See</u> SSR 83-34, 1983 WL 31256, at *8 (noting that determining whether a self-employed person's livelihood compares with the relevant standard of livelihood may require evidence from "the local Chamber of Commerce or other informed sources").

34

Prior to addressing Plaintiff's income, however, the Court rejects at the outset Plaintiff's arguments that the ALJ erred in failing to "develop any information regarding Plaintiff's earnings in 2010 or 2011" and in failing to "deduct any amount for the unpaid help provided by Plaintiff's nephew or wife." (Pl.'s Reply at 8-9.)  Critically, Plaintiff bears the burden of demonstrating the absence of substantial income.  See, e.g., Bowen, 482 U.S. at 146-47 n.5.  As a result, in the event Plaintiff desired that the ALJ consider such issues, Plaintiff alone had the burden to produce the necessary documentation.[12] Nevertheless, the Court finds ample record evidence to support the ALJ's ultimate conclusion that Plaintiff's post-injury income remained substantial. (See R. at 21.)

Indeed, as described in the following chart, Plaintiff's post-injury net income remained comparable (and in part greater than) his pre-injury earnings.[13]

---

Nevertheless, because the ALJ found Plaintiff's income comparable to that he earned before his impairment, 20 C.F.R. § 404.1575(c)(2)(ii) did not require the ALJ to engage in any additional comparative analysis.  See id.  Therefore, any arguable error at this alternative stage of the analysis does not require remand.

[12] However, even if Plaintiff produced relevant documentation, because Plaintiff's countable income remained comparable pre- and post-injury, the record evidence infers that the unpaid assistance would not have compelled a different conclusion.

[13] The Court derived Plaintiff's net income from Schedule C of Plaintiff's tax return. (See, e.g., R. at 248, 273, 294, 317, 361, 396.) Schedule C constitutes an appropriate measure of Plaintiff's net income, i.e., countable income for SGA purposes,

| Year | Plaintiff's Net Income | Plaintiff's Monthly Average | Under the Guidelines, "countable income" for a self-employed person is "substantial" if the amount averages more per month than: |
|---|---|---|---|
| **2003** (*pre-injury*) | $11,777[14] | $981.41 | $800 |
| **2004** (*pre-injury*) | $6,529 | $544.08 | $810 |
| **2005** (*year of onset*) | $249 | $20.75 | $830 |
| **2006** (*post-injury*) | $3,109 | $259.08 | $860 |
| **2007** (*post-injury*) | $584 | $48.66 | $900 |
| **2008** (*post-injury*) | $4,700 | $391.66 | $940 |
| **2009** (*post-injury*) | $29,654 | $2,471.16 | $980 |

Though Plaintiff indisputably earned less than the

guideline requirement for 2006, 2007, and 2008, the Court cannot

---

because it accounts (and allowed Plaintiff to deduct) for "normal" business expenses.  See Aponte v. Astrue, No. 11-700, 2012 WL 3231007, at *6 (M.D. Fla. July 12, 2012) (considering the plaintiff's schedule C earnings for purposes of the countable income test under 20 C.F.R. § 404.1575), adopted by, 2012 WL 3231029 (M.D. Fla. Aug. 6, 2012).

[14] Plaintiff does not appear to have submitted his 2003 tax return to the ALJ.  Therefore, the Court determined Plaintiff's net income from 2003 based upon the "Certified Earnings" table contained in the record.  (R. at 349-50.)  The Court finds reliance upon such document appropriate, because the Commissioner's record of a claimant's earnings constitutes evidence "of the amounts of wages paid to, and the self-employment income derived by, an individual."  42 U.S.C. § 405(c)(3).

ignore the clear evidence that Plaintiff's self-employment income remained comparable pre- and post-injury.  Indeed, Plaintiff earned, on average, $9,153 in each of the two years prior to his injury, and $9,511.75, on average, in each of the four years following his injury.  Moreover, Plaintiff earned far more from self-employment in 2009 than in 2004, the year prior to the alleged onset of his disability. (See R. at 396.)[15]  Given this, the Court cannot find that the ALJ erred in finding Plaintiff's pre- and post-injury countable income from self-employment remained sufficiently comparable pursuant to 20 C.F.R. §§ 404.1574(b), 404.1575(c)(2).  To the contrary, the Court concludes that clear and substantial evidence supports the ALJ's assessment in this respect.[16]

---

[15] Moreover, as stated above, his tax returns similarly reflect he was driving substantial miles for his self-employment after his injury, except in 2006.  He drove 17,668 miles for business in 2004, 14,555 in 2005, none in 2006, 19,889 in 2007, 3,455 in 2008, and 12,144 in 2009.  (R. at 249, 274, 295, 318, 362, 397.) All of these business mileage figures (except 2006) demonstrate many miles of driving for self-employment purposes.  Again, such facts are further evidence of substantial services rendered before and after the alleged onset of disability, dedicated to active management, all duly reported on his IRS From 1040, Schedule C, as a "Contractor" for his sole proprietorship named "Rubinson Contracting, LLC," for the years 2006-2009 (R. at 294, 317, 361, 396), and reported on Schedule C for 2004 and 2005 as the proprietor of his "Management Contracto [sic]" business. (R at 248, 273.)

[16] Because the ALJ determined that the record evidence showed the claimant engaged in SGA under the first test, the ALJ had no obligation to consider the remaining two tests.  See 20 C.F.R. § 404.1575(a)(2). Therefore, the Court need not reach the parties' positions concerning the ALJ's consideration of the second test.

V.    CONCLUSION

For all of these reasons, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's relevant employment activities constituted substantial gainful activity.  The Court, accordingly, affirms the ALJ's decision. An accompanying Order will be entered.


<u>  March 25, 2015  </u>                       <u>  s/ Jerome B. Simandle  </u>
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge